UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v().

    Case No. 13-cr-20764
    District Judge Paul D. Borman

MATTHEW SCHAMANTE,

    Defendant.
_____/

**ORDER DENYING DEFENDANT MATTHEW SCHAMANTE'S MOTION FOR COMPASSIONATE RELEASE**

**BACKGROUND**

Defendant Matthew Schamante, 37 years old, filed a *pro se* Motion for Compassionate Release on June 6, 2020, more than 30 days after he had submitted his May 3, 2020 request for compassionate release with his warden at FCI-Allenwood Low. The warden denied his request on May 13, 2020. He has complied with the exhaustion procedure set forth in 18 U.S.C. § 3182(c)(1)(A), and therefore his Motion is properly before this Court. The Court has appointed the Federal Community Defender Office to represent him, which filed a "Supplement to Matthew Schamante's Motion for Compassionate Release" on July 7, 2020 (ECF No. 838). The Government filed a "Response Opposing the Defendant's Motion for Compassionate Release" on July 20, 2020 (ECF No. 839). Defendant filed a

1

"Reply in Support of Motion for Compassionate Release" on July 22, 2020 (ECF No. 842).

## DISCUSSION

The Government Response informs the basis for his conviction and 102-month sentence:

> Following a six-week jury trial, Defendant Matthew "Arsenal" Schamante was found guilty of RICO conspiracy and weapons charges stemming from his involvement with the Phantom Motorcycle Club (PMC). As this Court aptly noted at Schamante's sentencing, "It was not a riding club by itself. It was a motorcycle gang, and it was involved in serious acts including shootings." (Sent. Tr. at 43.) Schamante was the Vice-President, and later President of the PMC's Pontiac Chapter. His "role is very described by the nickname that he had in the gang, which was Arsenal. Arsenal is guns." (*Id.*)

(Government Response, 7/7/2020, ECF No. 839, Page ID 11874.)

Defendant's "Supplement to Matthew Schamante's Motion for Compassionate Release" states that:

> Matthew Schamante is at severe risk from the COVID-19 pandemic spreading throughout the Bureau of Prisons [BOP] because he has medical conditions that could seriously harm or kill him if he becomes sick. Over the past five years in custody, he has shown significant rehabilitation. And if released, he has a community of people who will provide him both a safe place to live and employment…
>
> Mr. Schamante has multiple health conditions that make him particularly susceptible to the lethal effects of the virus. He is morbidly obese, weighing 475 pounds at 6'

> 2" tall, equating to a Body Mass Index (BMI) of more than 60. Additionally, Mr. Schamante has hypertension, which has been widely recognized as a factor that increases the risk of COVID-19…Mr. Schamante is incarcerated at FCI-Allenwood Low, which does not have a confirmed case yet, but where only 37 of over 1080 inmates have actually been tested…"
>
> Mr. Schamante has a six-year-old daughter and a family that will welcome him home and work to assist his reentry.

(ECF No. 831, 7/7/20, Page ID 11807-08.) Defendant also raises additional medical issues, discussed *infra*. Defendant was arrested in 2014, released on bond from February 2014 until March 2015, when he was detained after he was convicted at a jury trial of criminal RICO Conspiracy, 18 U.S.C. §§ 1962(d) and 1963(a), and Possession of a Firearm Not Registered in the National Firearms Registration, 26 U.S.C. §§ 5841, 5861(d) and 5871. He had complied with his bond conditions, and was employed during that year. He has no prior convictions. (*Id*. at Page ID 11809.)

The compassionate release statute, as amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), authorizes district courts to grant relief, "after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds (1) extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission…"

Defendant contends that release is consistent with the Sentencing Commission's Policy statements because he is suffering from a serious medical condition that constitutes an extraordinary and compelling reason, and that incarceration during this pandemic "substantially diminishes his ability to provide self-care within a correctional facility and from which condition he is not expected to recover." U.S.S.C. § 1B1.13, cmt. n. 1(A)(ii). Defendant contends that an additional ground for release is "--prison population susceptibility to heightened vulnerability because of COVID-19."

Defendant contends that his BOP 2020 medical classification of morbid obesity is an "extraordinary and compelling reason" to grant release under Guideline 1B1.13(1)(A), in addition to his hypertension for which he takes daily medication, pre-diabetes condition, anxiety disorder and PTSD. He also claims he suffers from an irregular heartbeat, and a pituitary gland tumor.

Defendant notes that "He has served over half of his sentence and is eligible for home detention in January, 2022." (Exh. 9, Sentence Computation, Supplement to Defendant's Motion for Compassionate Release, ECF No. 835, Page ID 11822.)

The Government "Response" asserts that:

> Schamante is a danger to the community, and the 3553(a) factors support the continued incarceration of this Defendant, whose offenses involved membership in a violent outlaw motorcycle gang, participation in the beating of a rival motorcycle gang member, providing firearms with obliterated serial numbers to other PMC

4

members, and personally possessing a sawed-off shotgun. Moreover, there have been zero cases of COVID-19 at his facility.

(ECF No. 839 at Page ID 11874-75.) The Government further asserts that:

The evidence at trial established that Schamante was involved in the brutal beating of a rival gang member by being part of a human wall so that no one could provide aid. More specifically, Schamante, who was armed at the event in question, celebrated the beating by taking the victims vest ("rag") and posing for pictures with it.

Schamante sold firearms to other PMC members…who could not obtain firearms themselves. In addition, Schamante would remove the serial numbers from these firearms to impede the ability to track them…When ATF agents executed a search warrant, the agents located a short-barrel shotgun and two books with information pertaining to the operation of the PMC….As this Court noted at sentencing [September 2, 2015, ECF No. 730, Page ID 10843]:

> "Arsenal is guns. This is what's going on with the gang, and this is what was being assisted by Mr. Schamante and also having possession of a sawed off shotgun which is in violation of the law and which is a very dangerous weapon."

(*Id*. at Page ID 11876.)

Attached to Defendant's Supplement (ECF No. 838) as "Exhibit 1," are

"Selected [BOP 2020] Medical Records indicating, *inter alia*:

    1.    ECF No. 838-2 (Page ID 11828) blood pressure: 138/87; weight: 475 lbs.; Exam Comments: Morbid obese. Well kempt without distress…

5

> Normal gait, ambulates without assistance devices (p. 1).

2. (*Id*. Page ID 11832.) This indicates multiple occasions when BOP doctors consulted with Defendant about the need for weight reduction: 11/1/2017-Need for weight reduction discussed again today, also 12/01/2016, 6/16/2016, 3/6/2016.

   Generalized anxiety disorder: Appears stable on exam. Told him to see Psychology, as needed.

   "Hypertension, Benign Essential:" Provided him with beta-blocker medication--Lisinopril.

The Government Response notes that Defendant's Presentence Report, prepared after interviewing him, states that "Schamante does not suffer from any serious health conditions. *See* PSR at ¶ 71." (Government Response, ECF No. 839, Page ID 11882.)

The Government contends:

> Only his obesity is a CDC risk factor for COVID-19.
>
> Schamante's "irregular heartbeat" is not supported by his medical records. At a chronic care appointment on February 28, 2020, he denied any chest pain, shortness of breath, palpitations, or discomfort when breathing while lying down flat. (Exh. A, Pg. 114-115.) "Pre-diabetes is not a COVID-19 risk factor. *See,* CDC website, <u>People at Higher Risk</u>." Schamante was diagnosed with "pituitary micro-edemia" which is a benign tumor. However, on January 18, 2019, Schamante refused a follow-up visit with an endocrinologist. (Exh. A, Pg. 30.) More recently, on February 28, 2020, Schamante "has refused MRI and further follow-up appointments," "is not on any medication at this time" (Exh. A, Pg. 114).

(ECF 839, Page ID 11883.)

With regard to "hypertension," the Government Response notes that "the CDC does not include regular hypertension on the list. *See,* CDC website, <u>People at Higher Risk</u>." (Government Response, ECF No. 839, Page ID 11883.) The Government adds: "Schamante's medical records from a chronic care appointment…on February 28, 2020, describe his hypertension as 'benign essential,' and notes that it is controlled on current medication, diet and exercise. (Government Exh. A, Pg. 114-115.)" (*Id*. at Page ID 11884.)

Defendant Schamante's "Reply" (ECF No. 842), contends that he has made significant strides at rehabilitation, and that the Government recognizes that Schamante's obesity is a CDC risk factor for COVID-19, but it never explicitly addresses whether this means he meets the "extraordinary and compelling" standard under U.S.S.G. § 1B1.13(1)(A). As to hypertension, which Schamante had previously controlled by exercise, diet and medication in February, Defendant contends that this is no longer the case because the present lockdown limits him to 3½ hours per week of exercise, and also notes the rise in his blood pressure from 110 in February to 138 in June. Defendant further reiterates that he also has other risk factors: pre-diabetes, anxiety disorder and PTSD.

Finally, Defendant contends that his rehabilitation is evidenced by the fact that he has had only one minor discipline incident during his five years at FCI-

Allenwood, and has acted to improve himself with classes. He is no longer able to see his family while on lockdown.

## CONCLUSION

The Court notes that Guideline § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) states:

> …If, <u>after</u> considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The Defendant is not a danger to the safety of any other person or to the community…<u>and</u>
>
> (3) The reduction is consistent with this policy statement.

(Emphases added.)

Thus, in the order of Guideline-required Court consideration, in § 1B1.12, the Court finds that the nature and circumstances of the offenses of conviction are very serious. In addition, the Court finds that there was a need to impose the significant 102-month sentence to reflect the seriousness of these offenses, to promote respect for the law, to deter criminal conduct, and finally, to protect the public from further crimes of this Defendant. Although the Court did not apply a leadership sentencing enhancement, the PSR, at paragraph 23, recognizes him as a "<u>Manager</u>" of the RICO enterprise: not a Leader, but also not just a Member. The

Court recognizes that Defendant provided fire power to the gang, and also acted physically to assist the gang in its crimes.

The Court concludes that if Defendant was released early to the community, he would pose a serious danger to the community, pursuant to 18 U.S.C. § 3142(g), notwithstanding his rehabilitation efforts within the prison system.

After reading the medical records and the briefs, the Court concludes that while morbid obesity is properly considered a risk factor if he was to contract COVID-19, in this case it does not constitute an "extraordinary and compelling reason" warranting a reduction in sentence, given his ability to act without any need of assistance in the prison, and participate in prison activities until the recent lockdown. The Court finds that this 37-year-old Defendant is not suffering from a serious medical condition "that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." Guideline § 1B1.13 app., n.1(A)(ii).

The Court further concludes that apart from morbid obesity his other medical issues are controlled by medication and counseling, and do not constitute significant risk factors to Defendant Schamante.

Finally, the United States Court of Appeals for the Sixth Circuit recently noted in *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020):

> The BOP has in fact put in place and updated its protocols to address the novel risks from COVID-19.

9

As of July 28, 2020, FCI-Allenwood Low has had 66 inmate tests for COVID-19 and no positives.

Accordingly, the Court denies Defendant Matthew Schamante's Motion for Compassionate Release.

SO ORDERED.

DATED:  July 30, 2020                           s/Paul D. Borman
                                                PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE